**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

<table>
<tr><td>TAMETRIUS WALKER, Individually and<br>as Parent and Next Friend of Q.W., a Minor,<br><br>  Plaintiff,<br><br>v.<br><br>FAYETTE COUNTY SCHOOLS, et al.,<br><br>  Defendants.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td><br><br><br>No. 2:19-cv-02562-TLP-tmp<br><br>JURY DEMAND</td></tr>
</table>

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Tametrius Walker, individually and as parent and next friend of Q.W., a minor, sued Defendant Ben Gilliam for violating Q.W.'s constitutional rights under 42 U.S.C. § 1983. (ECF No. 11.)  Plaintiff brings claims for battery and outrageous conduct also.  (*Id.*)

Defendant now moves for summary judgment.  (ECF No. 44.)  Plaintiff responded in opposition and Defendant replied. (ECF Nos. 52, 53 & 54.)  For the reasons below, the Court **DENIES** the motion for summary judgment.

## BACKGROUND

### I. Undisputed Facts and Procedural History

Defendant filed a statement of undisputed facts and Plaintiff responded.  (ECF Nos. 44-1 & 52-1.)  Plaintiff included additional undisputed facts and, in turn, Defendant responded to those. (ECF Nos. 52-1 at PageID 260–62; 54-2.)  And so, these facts, taken from the parties' statements of undisputed material facts, are undisputed unless otherwise stated.

### A.      Factual Background

In December 2014, Q.W. was a seventh-grade student at East Junior High School in Fayette County, Tennessee.  (ECF Nos. 44-1 at PageID 177; 52-1 at PageID 254.)  Defendant Gilliam was a history teacher there.  (*Id.*)  Both Q.W. and Defendant were walking down a school hallway when Q.W. inadvertently bumped into Defendant, who was standing behind Q.W.  (ECF Nos. 44-1 at PageID 178; 52-1 at PageID 255, 262; 54-2 at PageID 381.)  Defendant remembers hearing Q.W. use profanity[1] in violation of school rules.[2]  (ECF Nos. 44-1 at PageID 177–78; 52-1 at 254–55.)  Believing that Q.W. directed the profanity at him, Defendant decided to reprimand Q.W.  (ECF Nos. 4-1 at PageID 179; 52-1 at PageID 256–57.)  Q.W., however, denies that he used profanity when he bumped into Defendant.  (ECF No. 44-6 at PageID 218.)

Even though there is video footage[3] showing most of the incident, the parties dispute what happens next.  (ECF Nos. 44-1 at PageID 178; 52-1 at PageID 254-55.)  Defendant claims

---

[1] Defendant testified that he heard Q.W. say "what the f*** is wrong with you."  (ECF No. 44-1 at PageID 179; 52-1 at PageID 256.)

[2] Defendant Gilliam relies on his own testimony in his undisputed facts.  And Plaintiff disputes whether Defendant Gilliam is a reliable witness.  (ECF No. 52-1 at PageID 255–56.)  To dispute Defendant's credibility, Plaintiff attaches an affidavit from William Hackett.  (ECF No. 52-15.)  In that affidavit, Mr. Hackett discusses an alleged incident in 2010 where Defendant allegedly brandished a firearm during a dispute.  (*Id.*)  But this is a summary judgment motion and this Court does not weigh the credibility of witnesses.  Simply put, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]"  *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 806 (6th Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  For that reason, this Court will not rely on Mr. Hackett's affidavit about the gun incident in 2010 to decide this motion.  As to whether his testimony about the event will be admissible at trial, this Court leaves that decision for a later date.

[3] Plaintiff argues that Defendant did not authenticate the timestamp on the video "as accurately reflecting the passage of time."  (ECF No. 52-1 at PageID 255.)  As a result, she argues that the timestamp is hearsay.  (*Id.*)  Because Defendant did not authenticate the timestamp on the video, the Court does not consider the timestamp in its analysis.  The Court notes however that the video's formatting is unique and difficult for this Court to use.  The video has a slide bar at the bottom of the screen that adjusts the speed of video but it is hard to set the speed at a normal rate.

that he gripped Q.W.'s backpack straps and moved him to the side of the hallways to reprimand him privately.  (ECF No. 44-1 at PageID 179.)  But Q.W. testified that Defendant grabbed him by the neck and lifted him off the ground.  (ECF No. 44-6 at PageID 219–23.)  And the video does not show where Defendant grabbed Q.W.  As Plaintiff notes, "[t]here are a number of frames in the video where Defendant Gilliam's hands cannot be seen."[4]  (ECF No. 52-1 at PageID 257–58.)

Defendant told Plaintiff to "watch [his] mouth," and then walked with Plaintiff down the hallway.  (ECF Nos. 44-1 at PageID 180; 52-1 at PageID 259.)  Though Defendant argues that Q.W. had no injuries after the incident, Q.W. testified that his face was red and he experienced neck pain and limited range of motion in his neck.  (ECF No. 44-6 at PageID 226–229.)  Plaintiff took pain medication for two weeks after the incident.  (ECF Nos. 44-1 at PageID 181; 52-1 at PageID 260.)

The Court now turns to this case's procedural history.

**B.      Procedural History**

Q.W. was a minor when the incident occurred in December 2014.  (ECF No. 52-1 at PageID 260; 54-2 at PageID 379.)  In November 2015, Plaintiff sued Defendants Fayette County Schools, James Teague, Ben Gilliam, and Diane Watkins[5] in the Circuit Court of Fayette

---

As a result, the Court cannot determine exactly how long Defendant and Q.W. are out of view. That said, it appears like they are out of view only for a few seconds.

[4] The parties dispute how long Defendant's hands were outside the camera's view.  (*See* ECF No. 52-1 at PageID 258.)

[5] Plaintiff voluntarily dismissed Defendant James Teague in September 2019.  (ECF No. 13.) And in August 2020, she dismissed Defendants Fayette County Schools and Diana Watkins with prejudice as well.  (ECF No. 32 at PageID 152.)  As a result, Defendant Gilliam is the only remaining Defendant.

County, Tennessee, both individually and on behalf of Q.W.  (ECF Nos. 44-1 at PageID 176; 52-1 at PageID 253.)  Plaintiff did not issue summons for Defendant Gilliam at that time.  (*Id.*)

Then in February 2017, Plaintiff amended her complaint and issued summons for Defendants for the first time.  (ECF Nos. 44-1 at PageID 176; 52-1 at PageID 254.)  But she did not serve the summons on Defendant Gilliam.  (ECF Nos. 44-1 at PageID 177; 52-1 at PageID 254.)

Plaintiff did not reissue summons for Defendant Gilliam until about a year later.  (*Id.*)  Although the parties agree that Defendant Gilliam received the summons, they dispute whether Plaintiff properly served Defendant under Tennessee Rules of Civil Procedure 3 and 4. (*See* ECF No. 54-2 at PageID 379.)  Shortly after receiving the summons, Defendant Gilliam moved to dismiss for improper service.  (ECF No. 44-2 at PageID 184.)  But then Plaintiff amended her complaint adding a § 1983 claim.  (ECF No. 44-3.)  On that basis, Defendants removed the case to this Court.  (*Id.*; *see* ECF No. 1.)

Now Plaintiff's only remaining claims are against Defendant Gilliam.  And Defendant now argues that this Court should grant summary judgment because (1) Plaintiff's claims are time-barred and (2) he is entitled to qualified immunity.

## LEGAL STANDARD FOR SUMMARY JUDGMENT MOTION

### I.    Summary Judgment Standard

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense."  *Bruederle v.*

*Louisville Metro Gov't*, 687 F.3d 771, 776 (6th Cir. 2012) (citing *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)).

"In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the nonmoving party." *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  And "[t]he moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." *Mosholder v. Barnhardt*, 679 F.3d 443, 448 (6th Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." *Id.* at 448–49; *Matsushita*, 475 U.S. at 587.  This means that, if "the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." *Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 914 (6th Cir. 2013) (quoting *Chapman v. United Auto Workers Loc. 1005*, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)); *see also Kalich v. AT & T Mobility, LLC*, 679 F.3d 464, 469 (6th Cir. 2012).

What is more, "to show that a fact is, or is not, genuinely disputed, both parties are required to either cite to particular parts of materials in the record or show that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Bruederle*, 687 F.3d at 776 (internal quotations and citations omitted); *see also Mosholder*, 679 F.3d at 448 ("To support its motion, the moving party may show 'that there is an absence of evidence to support the nonmoving party's case.'" (quoting *Celotex*, 477 U.S. at 325)).  But "[c]redibility determinations, the

weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" *Martinez*, 703 F.3d at 914 (alteration in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  And so, "[t]he court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

Ultimately, the "question is whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015) (quoting *Liberty Lobby*, 477 U.S. at 251–52).  "[A] mere 'scintilla' of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in her favor."  *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 529 (6th Cir. 2012) (quoting *Liberty Lobby*, 477 U.S. at 251). And statements in affidavits that are "nothing more than rumors, conclusory allegations and subjective beliefs" are insufficient evidence.  *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584–85 (6th Cir. 1992).

## II.    Video Evidence

As mentioned above, the Court ordinarily must view facts in the light most favorable to the nonmoving party when deciding a motion for summary judgment.  *See Robertson*, 753 F.3d at 614.  But an "added wrinkle" exists when the record includes a "videotape capturing the events in question."  *Scott v. Harris,* 550 U.S. 372, 378 (2007).

If "videos in the record show facts so clearly that a reasonable jury could view those facts in only one way," the court should view those facts "in the light depicted by the videos."  *Latits v. Phillips*, 878 F.3d 541, 547 (6th Cir. 2017).  That said, when "facts shown in videos can be

6

interpreted in multiple ways or if videos do not show all relevant facts, such facts should be viewed in the light most favorable to the non-moving party." *Id.* (citing *Godawa v. Byrd*, 798 F.3d 457, 463 (6th Cir. 2015)).

## ANALYSIS

### I. Service of Process

#### A. Legal Standards

Defendant's motion for summary judgment centers on the relationship between (1) Tennessee Rule of Civil Procedure 3, (2) Tennessee Rule of Civil Procedure 4, and (3) the tolling statute for minors.

##### i. Tennessee Rules of Civil Procedure 3 and 4

Tennessee Rules of Civil Procedure 3 and 4 govern service of summons. *Stafford v. Lucas*, No. W2019-01438-COA-R3-CV, 2020 WL 6112984, at *3 (Tenn. Ct. App. Oct. 15, 2020). Courts must read Rules 3 and 4 together. *Meersman v. Regions Morgan Keegan Tr.*, No. M2017-02043-COA-R3-CV, 2018 WL 4896660, at *8 (Tenn. Ct. App. Oct. 9, 2018).

Rule 3 explains how to begin a lawsuit. *McNeary v. Baptist Mem'l Hosp.*, 360 S.W.3d 429, 436–37 (Tenn. Ct. App. 2011). Under Rule 3,

> All civil actions are commenced by filing a complaint with the clerk of the court. An action is commenced within the meaning of any statute of limitations upon such filing of a complaint, whether process be issued or not issued and whether process be returned served or unserved. If process remains unissued for 90 days or is not served within 90 days from issuance, regardless of the reason, the plaintiff cannot rely upon the original commencement to toll the running of a statute of limitations unless the plaintiff continues the action by obtaining issuance of new process within one year from issuance of the previous process or, if no process is issued, within one year of the filing of the complaint.

Tenn. R. Civ. P. 3. So "[i]f process is not served within ninety days of issuance, a plaintiff cannot rely upon the original commencement to toll the statute of limitations *unless* the plaintiff

obtains issuance of new process within one year of issuance of the previous process." *Fair v. Cochran*, 418 S.W.3d 542, 545 (Tenn. 2013) (emphasis in original).

Rule 4 provides "the requirements necessary to effect proper service of process." *McNeary*, 360 S.W.3d at 437. Rule 4.01 explains how to issue summons, Rules 4.02 and 4.03 address the form and return of summons, and Rule 4.04 sets out the requirements for service of process within the state of Tennessee. Under Rule 4.03,

> If a summons is not served within 90 days after its issuance, it shall be returned stating the reasons for failure to serve. The plaintiff may obtain new summonses from time to time, as provided in Rule 3, if any prior summons has been returned unserved or if any prior summons has not been served within 90 days of issuance.

Tenn. R. Civ. P. 4.03(1).

### ii. Tennessee Code Annotated Section 28-1-106

The state of Tennessee tolls the statute of limitations for minors. Under § 28-1-106,

> If the person entitled to commence an action is, at the time the cause of action accrued, either under eighteen (18) years of age, or adjudicated incompetent, such person, or such person's representatives and privies, as the case may be, may commence the action, after legal rights are restored, within the time of limitation for the particular cause of action, unless it exceeds three (3) years, and in that case within three (3) years from restoration of legal rights.

Tenn. Code Ann. § 28-1-106(a). "[T]he statute of limitations is tolled for purposes of the Tolling Statute for so long as the person to whom the claim belongs is under a disability because of age or unsound mind." *Sullivan v. Chattanooga Med. Invs.*, *LP*, 221 S.W.3d 506, 510 (Tenn. 2007); *Abel ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99, 103 (Tenn. 2006) ("If the plaintiff is under some form of legally recognized disability which tolls the statute of limitations, the statute of limitations remains tolled despite the possibility that some representative could bring the action on the plaintiff's behalf."). So the limitations period begins to run when the minor reaches the age of 18. *Abel*, 202 S.W.3d at 105.

The statute of limitations for Plaintiff's § 1983 claim is one year. *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005). And so is the statute of limitations for her battery and outrageous conduct claims. Tenn. Code Ann. § 28-3-104; *see also Olivier v. City of Clarksville*, No. M2016-02473-COA-R3-CV, 2017 WL 3535016, at *5 (Tenn. Ct. App. Aug. 17, 2017). Q.W. was a minor when this incident occurred, when Plaintiff first sued in 2014, and when Defendant Gilliam received summons in 2018. (*See* ECF No. 54-2 at PageID 378). But Q.W. is no longer a minor and the statute of limitations stopped tolling over a year ago.[6]

The Court now considers how Rule 3, Rule 4, and § 28-1-106 impact Plaintiff's claims here.

### B.   Plaintiff's Failure to Comply with Rule 3 Does Not Require Dismissal of Her Claims

Defendant argues that Plaintiff never complied with Tennessee Rule of Civil Procedure 3. (ECF No. 44-2 at PageID 187.) And as a result, the Court has to dismiss Plaintiff's claims for failure to effect proper service. (*Id.*) What is more, because Q.W. is 19 now, Defendant contends that the statute of limitations bars Plaintiff's claims. (*Id.*)

Plaintiff admits the she did not comply with Rule 3. (ECF No. 52-2 at PageID 272.) But she argues that her noncompliance with the rule does not impact her claims here. She assert that, because Q.W. was a minor, Plaintiff served Defendant before the statute of limitations ran. (*Id.*) She argues that she did not rely on Rule 3 to toll the statute of limitations and that her failure to follow that Rule does not affect her claims. (*Id.* at PageID 273.) For the reasons explained below, this Court agrees with Plaintiff.

---

[6] Although Plaintiff said it would provide the Court "directly" with documents showing Q.W.'s birthdate, she did not do so. Even so, the parties do not dispute that Q.W. was a minor in 2014 and that he is now over the age of 19. (*See* ECF No. 54-2 at PageID 378).

### i.      Rule 3's Language and Relevant Case Law

Rule 3's language suggests that the only penalty for not following the rule is that the plaintiff cannot rely on the filing of the complaint to toll the statute of limitations.  Indeed, Rule 3 "unambiguously instructs that the effectiveness of the original commencement to toll the running of the statute of limitations depends initially upon whether process is served within ninety days of issuance." *Fair v. Cochran*, 418 S.W.3d 542, 545 (Tenn. 2013).  So if a plaintiff fails to serve process within ninety days, "a plaintiff cannot rely upon the original commencement to toll the statute of limitations *unless* the plaintiff obtains issuance of new process within one year of issuance of the previous process." *Id.*; *Moses v. Oldham*, No. W2016-01171-COA-R3-CV, 2017 WL 3149635, at *6 (Tenn. Ct App. July 25, 2017) ("If the plaintiff fails to comply with Rule 3, the statute of limitations is not tolled by the 'original commencement'" of the action.)  With that in mind, nothing in the rule suggests that this Court must dismiss Plaintiff's claims for failing to follow Rule 3.

There are few Tennessee cases discussing what happens when a plaintiff violates Rule 3 but still serves the defendant within the statute of limitations.  In *Suntrust Bank v. Sheep*, *Inc*., the plaintiff did not follow Rule 3 after it waited two years beyond the original issuance of process to reissue summons.  No. E2005-02377-COA-R3-CV, 2006 WL 1735132, at *2 (Tenn. Ct. App. June 26, 2006).  Because the plaintiff violated Rule 3, the trial court dismissed the case.  *Id.* at *1.  On appeal, the plaintiff argued that its failure to comply with Rule 3 was "of no consequence because plaintiff is not relying on Tenn. R. Civ. P. 3 to toll the statute of limitations." *Id.* at *2.  In fact, the plaintiff eventually served the defendant within the statute of limitations.  *Id.*  After "careful analysis of Tenn. R. Civ. P. 3," the Tennessee Court of Appeals found that "the proscription set forth in [Rule 3] is inapplicable to cases where the plaintiff is not relying upon

the original commencement of the action to toll the running of the statute of limitations." *Id.* As a result, it vacated the trial court's decision.

Later, the Tennessee Court of Appeals discussed its *Suntrust* decision in *Meersman v. Regions Morgan Keegan Trust*. 2018 WL 4896660, at *2. There, the plaintiff did not try to reissue summons after returning it unexecuted. *Id.* at *1. Because the plaintiff never served the defendant, the trial court dismissed the complaint for failure to prosecute. *Id.* at *2. On appeal, the plaintiff argued that, because the statute of limitations for his claims had not expired, the trial court should not have dismissed his claims. *Id.* at *9. The court of appeals affirmed the trial court's dismissal, but only after distinguishing the facts in *Meersman* from the facts in *Suntrust*. The court emphasized that in *Suntrust*, "the plaintiff obtained proper service before the case was dismissed." *Id.* at *10. In contrast, the plaintiff in *Meersman* never served the defendants, and so the trial court never "acquired jurisdiction over the parties because of the insufficient service of process." *Id.*

The Tennessee Court of Appeals has also considered whether minors have to comply with Rules 3 and 4. In *McNeary v. Baptist Memorial Hospital*, two parents sued the defendants individually and on behalf of their infant daughter. 360 S.W.3d at 432. But the parents did not comply with Rule 3. They failed to serve one of the defendants until "nearly three years from the date of the initial filing of the suit, and over two years after the issuance of the second summons." *Id.* at 438. The parents argued that their daughter's status as a minor "negates the requirements of Tennessee Rules of Civil Procedure 3 and 4." *Id.* The court, however, found that the plain language of the rules did not make an exception for minors and that the daughter's "status as a minor is irrelevant to the question of proper issuance and service of process." *Id.* In

the end, the court of appeals found that the court lacked personal jurisdiction over the defendant because the parents violated Rules 3 and 4.  *Id.* at 438–39.

The Court now turns to whether Plaintiff served Defendant according to the Tennessee Rules of Civil Procedure.

### ii.     Plaintiff Properly Served Defendant Under Rule 4

If a plaintiff fails to serve the defendant, the court never obtains personal jurisdiction over that party.  *Ramsay v. Custer*, 387 S.W.3d 566, 568 (Tenn. 2012) ("Service of process is an essential part of a legal proceeding because the trial court's jurisdiction of the parties is acquired by service of process.").  That is why "[t]he record must establish that the plaintiff complied with the requisite procedural rules, and the fact that the defendant had actual knowledge of attempted service does not render the service effectual if the plaintiff did not serve process in accordance with the rules."  *Id.*

Defendant here argues that Plaintiff must comply with Rule 3 to effect proper service.  But to serve a defendant properly, a plaintiff must comply with Rule 4 only.  *Id.* at 569 ("[S]ervice of process that does not meet the requirements of Rule 4 is void.").  Put differently, violating Rule 3 does not make service ineffective under Rule 4.  As the Tennessee Court of Appeals explained,

> [I]f process is served and proper return is made as provided in Rule 4, the process possesses the necessary validity to bring the person served before the court for jurisdictional purposes.  Process may be valid under Rule 4, but still insufficient to toll the statute of limitations under Rule 3.  Rule 4 is in no way intended to toll the statute of limitations.  Therefore, even if service is complete and valid under Rule 4, if the requirements of Rule 3 have not been met, the statute of limitations is not tolled.

*First Tenn. Bank, N.A. v. Dougherty*, 963 S.W.2d 507, 509–10 (Tenn. Ct. App. 1997).  In other words, service of process may be valid for jurisdictional purposes under Rule 4 even if it cannot toll the statute of limitations under Rule 3.

Plaintiff served Defendant in 2018 and, reading the facts in the light most favorable to Plaintiff, that service complied with Rule 4's requirements.[7]  (*See* ECF No. 1-3 at PageID 51; 44-3 at PageID 196–97.)  This means the Court has personal jurisdiction over the parties.

### iii.    Rule 3 Does Not Require Dismissal of Plaintiff's Claims

True enough, Plaintiff did not comply with Rule 3.  This means that Rule 3 did not toll the statute of limitations for Plaintiff's claims.  That said, just because Rule 3 did not toll the statute of limitations here does not also mean that Plaintiff's claims are time barred.  To the contrary, Tenn. Code Ann. § 28-1-106 already tolled the time limits for Q.W.'s claims until he turned 18.  So he did not need to rely on Rule 3.  As a result, Plaintiff served Defendant according to Rule 4 before the statute of limitations ended.  And so, the Court finds that Plaintiff's claims are not time-barred.

Defendant directs the Court to *Allstate Insurance Co. v. Hamilton Beach/Proctor-Silex, Inc.*, No. 05-60052, 2005 WL 2658950 (E.D. Mich. Oct. 18, 2005).  There, to toll the statute of limitations under Michigan law, a plaintiff must file the complaint and serve it on the defendants within the statute of limitations period.  *Id.* at *2.  And because the plaintiff did not serve the defendant within that period, the court found that the statute of limitations barred her claims.  *Id.*

---

[7] Defendant argues that Plaintiff must comply with Rule 3 to serve someone properly under Rule 4.  (ECF No. 54-1 at PageID 373.)  This is because Rule 4.03 says that a plaintiff "may obtain new summonses from time to time, as provided in Rule 3."  But this language in Rule 4.03 is permissive, not mandatory.  And as the Tennessee Court of Appeals explained, a plaintiff may properly serve a defendant under Rule 4 even if they do not comply with Rule 3.  *See Dougherty*, 963 S.W.2d at 509–10.

at *3.  But the facts in that case differ from the facts here.  The plaintiff in *Allstate Insurance Co.* did not properly serve the defendant before the statute of limitations ended.  Here though, Plaintiff served Defendant according to Rule 4 in February 2018, before Q.W. turned 19 and the statute of limitations ran.

This is a key difference.  Like the Court in *Suntrust* explained, "the proscription set forth in [Rule 3] is inapplicable to cases where the plaintiff is not relying upon the original commencement of the action to toll the running of the statute of limitations . . . ." 2006 WL 1735132, at *2.  Because Tennessee law tolls the one-year statute of limitations for minors until they turn 18, Plaintiff did not need to rely on Rule 3 to toll the statute of limitations.  So in the end, Rule 3 does not bar Plaintiff's claims.

This finding does not conflict with the decision in *Meersman*.  This case is distinguishable from *Meersman* because, unlike the plaintiff in that case, Plaintiff here served Defendant with process during the statute of limitations period.  Nor does this Court's conclusion conflict with *McNeary*.  There, the court found that the party's "status as a minor is irrelevant to the question of proper issuance and service of process." 360 S.W.3d at 438.  This Court agrees. Like any party, minors in Tennessee must comply with the Tennessee Rules of Civil Procedure. Even so, dismissal of an action is not the penalty for violating Rule 3.  Instead, a plaintiff that violates Rule 3 cannot rely on the original filing date to toll the statute of limitations.  *See* Tenn. R. Civ. P. 3.

Simply put, because she did not comply with Rule 3, Plaintiff could not rely on the original commencement of this action to toll the statute of limitations.  But because Q.W. was a minor, she did not need Rule 3.  She had Tenn. Code Ann. § 28-1-106 instead.  Plaintiff served Defendant here according to Rule 4 in 2018, before the statute of limitations ended.  And neither

Rule 3 nor Tennessee case law says that service is improper or insufficient if a plaintiff fails to follow Rule 3's requirements.

In the end, because Plaintiff served Defendant according to Rule 4 before the statute of limitations ended, her claims are not time-barred. The Court therefore **DENIES** Defendant's motion for summary judgment on this issue.

## II.     Qualified Immunity

### A.     Qualified Immunity Standard

Government officials "are immune from civil liability unless, in the course of performing their discretionary functions, they violate the plaintiff's clearly established constitutional rights." *Mullins v. Cyranek*, 805 F.3d 760, 765 (6th Cir. 2015) (citing *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012)). To determine whether qualified immunity applies, a court must decide (1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right," and (2) "whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal references and citations omitted). Under this standard, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see also Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

The doctrine allows government officials "breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (per curiam) (citations and quotations omitted). The Sixth Circuit "has long recognized that the purpose of this doctrine is to protect officers 'from undue interference with their duties and from potentially disabling threats of liability.'"

*Nelson v. City of Battle Creek, Mich.*, No. 18-1282, 2020 WL 916966, at *2 (6th Cir. Feb. 26, 2020) (quoting *Sample v. Bailey*, 409 F.3d 689, 695 (6th Cir. 2005)). "Once the defending officer raises qualified immunity, the plaintiff bears the burden of showing that the officer is not entitled to qualified immunity." *Id.* (citing *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013); *Coble v. City of White House*, 634 F.3d 865, 870–71 (6th Cir. 2011)).

   B.     **Analysis of Defendant's Qualified Immunity Claims**

   The parties agree that public school students have a clearly established right to be free from bodily injury in an educational setting.  (ECF Nos. 44-2 at PageID 191; 52-2 at PageID 275.); *see also Nolan v. Memphis City Schs.*, 589 F.3d 257, 269 (6th Cir. 2009); *Webb v. McCullough*, 828 F.2d 1151, 1158 (6th Cir. 1987).  So Defendant's qualified immunity depends on whether Defendant violated Q.W.'s constitutional right to be free from bodily injury.

   i.     **Legal Standard for Violating Right to Be Free from Bodily Injury in Schools**

   To violate a student's right to be free from bodily injury, the state actor's conduct must "shock the conscience." *Domingo v. Kowalski*, 810 F.3d 403, 410–11 (6th Cir. 2016).  Put another way, "to raise a material issue of fact as to whether [a defendant] violated [a plaintiff's] rights to personal security and freedom from abuse at the hands of state officials," the plaintiff "must identify conduct that is 'so brutal, demeaning, and harmful as literally to shock the conscience.'" *Id.* (quoting *Webb v. McCullough*, 828 F.2d 1151, 1158 (6th Cir. 1987)).

   When a student alleges that a teacher's "educational techniques" violated the student's constitutional rights, the Sixth Circuit applies a four-part test (the "*Gottlieb* test") to determine whether the teacher's conduct shocks the conscience:

   a) Was there a pedagogical justification for the use of force?; b) Was the force utilized excessive to meet the legitimate objective in this situation?; c) Was the force applied in a good-faith effort to maintain or restore discipline or maliciously

16

and sadistically for the very purpose of causing harm?; and d) Was there a serious injury?

*Id.* at 411 (quoting *Gottlieb v. Laurel Highlands Sch. Dist.*, 272 F.3d 168 (3d Cir. 2001));

*see also Gohl v. Livonia Pub. Schs. Sch. Dist.*, 836 F.3d 672, 678–79 (6th Cir. 2016).

Defendant argues that he had a pedagogical justification for using force against Q.W.  (ECF No. 44-2 at PageID 193.)  For that reason, the Court applies the *Gottlieb* test to Plaintiff's claims.[8]  *See Doe by Doe v. Livonia Pub. Schs.*, No. No. 13-cv-11687, 2018 WL 4953086, at *9–10 (E.D. Mich. Oct. 12, 2018).  Applying those factors here, the Court finds that there is a genuine issue of material fact about whether Defendant violated Plaintiff's constitutional rights.

> ii.    **There Is a Genuine Dispute About Whether Defendant Violated Plaintiff's Constitutional Rights**

Defendant argues that all four factors of the *Gottlieb* test weigh in his favor.  He contends that he justifiably used "brief and limited force" to reprimand Q.W.  (ECF No. 44-2 at PageID 193.)  And that "the force used was far short of excessive," because "at no point in time" did Defendant choke Q.W.  (*Id.*)  Defendant also claims that he used force in a good-faith attempt to correct Q.W.'s behavior privately and that Q.W. had no injuries from the incident.  (*Id.*)  All in all, Defendant argues that, "[b]ecause Plaintiff cannot show that Defendant violated Q.W.'s

---

[8] The Sixth Circuit "has adopted two distinct frameworks for assessing whether a student's constitutional claim 'shocks the conscience': one for excessive corporal punishment, the other for educational techniques involving force."  *Kouider v. Parma City Sch. Dist. Bd. of Educ.*, 480 F. Supp. 3d 772, 783 (N.D. Ohio Aug. 19, 2020).  Because Defendant provides a pedagogical justification for using force, the Court applies the *Gottlieb* test, as adopted in *Domingo*.  *See Doe by Doe v. Livonia Pub. Schs.*, No. No. 13-cv-11687, 2018 WL 4953086, at *9–10 (E.D. Mich. Oct. 12, 2018).  Plus, the parties seem to agree that the *Gottlieb* test applies.  (*See* ECF Nos. 44-2 at PageID 193; 52-2 at PageID 277.)

Fourteenth Amendment rights, Defendant Gilliam is entitled to qualified immunity and Plaintiff's claims must be dismissed." (*Id.* at PageID 194.)

Plaintiff responds that Q.W.'s alleged infraction was minor and that Defendant knew he could not administer corporal punishment. As a result, "there was no pedagogical justification for grabbing Q.W. by the neck, pushing him into a corner, and choking him." (ECF No. 52-2 at PageID 277.) What is more, Plaintiff contends that Defendant acted out of anger, not with the intention of privately reprimanding Q.W. (*Id.* at PageID 278.) And finally, Plaintiff argues that though Q.W.'s injuries were "physically minimal," they had a "serious" impact on him emotionally. (*Id.*) Following the incident, Plaintiff attended anger management classes and sought psychological treatment. (*Id.*)

Here, an "added wrinkle" exists because the record includes "videotape capturing the events in question." *Scott v. Harris,* 550 U.S. 372, 378 (2007). When "facts shown in videos can be interpreted in multiple ways or if videos do not show all relevant facts, such facts should be viewed in the light most favorable to the non-moving party." *Latits*, 878 F.3d at 547. The Court finds that the video fails to show the entire encounter and one can interpret it different ways. For example, after Q.W. and Defendant bump into each other in the hallway, Defendant grabs Q.W. But he does so in a crowd of students, so it is hard to see Defendant's hands. While holding Q.W., Defendant then takes him several feet down the hallway until Q.W. is out of the camera's view. As a result, for a few seconds, Q.W. is off-screen and the video does not show Defendant's hands.

What is more, the parties give conflicting testimony about what happened while Q.W. was off-screen. Defendant testified that he gripped Q.W.'s backpack straps and moved him to the side of the hallway. (ECF No. 44-5 at Page ID 206.) But at the same time, Q.W. testified

that Defendant choked him by grabbing him by the neck and lifting him off the ground.  (ECF No. 44-6 at PageID 219–20.)  Watching the video does not solve this dispute.

In the end, the video does not show whether Defendant grabbed Q.W. by the backpack straps or the neck.  For that reason, the Court interprets the video in the light most favorable to Plaintiff and finds that there is a genuine dispute of fact about whether Defendant choked Q.W. during the incident.  With that in mind, a reasonable jury watching the video could find that Defendant choked Q.W.  *See Latits*, 878 F.3d at 547.

But even if Defendant choked Q.W., is there a genuine dispute about whether Defendant's actions shock the conscience?  There is.  And that is because the evidence is conflicting about whether Defendant used force for disciplinary reasons.  The first factor under the *Gottlieb* test is whether there was a pedagogical justification for the use of force.  "[T]he 'key inquiry is not what form the use of force takes but whether the use of force is related to the student's misconduct at school and for the purposes of discipline.'"  *Domingo*, 810 F.3d at 412 (quoting *T.W. v. Sch. Bd. of Seminole Cnty.*, 610 F.3d 588, 198–99 (11th Cir. 2010)).  In other words, the court "looks to the ends motivating the teacher's action and not the means undertaken to achieve those ends."  *Id.*

Defendant claims he had a pedagogical justification for disciplining Q.W., although he denies ever grabbing Plaintiff by the neck.  Defendant testified that Q.W. used profanity in violation of school policy and that he took Q.W. aside to reprimand him.  (ECF No. 44-5 at PageID 204–05.)  Q.W., however, testified that he did not use profanity when he and Defendant encountered each other in the hall.  (ECF No. 44-6 at PageID 218.)  And from the video, it is unclear whether Q.W. said anything before Defendant grabbed him.  So this could boil down to a credibility finding by the jury.  Because, as it stands, this Court has to take the evidence in the

light most favorable to Plaintiff. As a result, there is a genuine dispute of material fact about whether Q.W. used profanity and, if so, whether that gave Defendant's a "legitimate educational purpose" to grab Plaintiff by the neck. *See Domingo*, 810 F.3d at 413.

The second factor asks whether the force was unconstitutionally excessive. And "when a teacher's allegedly unconstitutional conduct was motivated by a legitimate educational or disciplinary goal, the conduct must be clearly extreme and disproportionate to the need presented to be excessive in the constitutional sense." *Id.* at 414. So the purpose behind Defendant's actions—whether he used force for an educational purpose—is important to this analysis as well.

That said, the Sixth Circuit has held that, "even in a case where a teacher slapped a student with no pedagogical purpose whatsoever . . . the single slap was not unconstitutionally excessive, because it 'was neither severe in force nor administered repeatedly.'" *Id.* (quoting *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996)). But Plaintiff contends that Defendant did more than slap Plaintiff here—he choked Q.W. A reasonable jury may find that choking a student, with or without a pedagogical purpose, is an excessive use of force. *See, e.g., Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (teacher's conduct shocked the conscience where teacher slammed student's head into a blackboard, threw her on the ground, and choked her for not bringing a pencil to class); *Kouider v. Parma City Sch. Dist. Bd. of Educ.*, 480 F. Supp. 3d 772, 783–84 (N.D. Ohio 2020) (finding genuine dispute of material fact about whether spraying disabled student with juice shocked the conscience). As a result, this factor too suggests that there is a material dispute of fact.

For the same reasons, there is dispute about the third factor—whether Defendant used force in a good-faith effort to maintain or restore discipline, or maliciously to cause harm instead. Again, considering the facts in the light most favorable to Plaintiff, the Court must

assume that Q.W. did not use profanity and that Defendant grabbed Q.W. by the neck and choked him.  Thus, there is a question of fact about whether Defendant choked Q.W. out of anger and with malicious intent to cause harm.

Finally, the last *Gottlieb* factor questions whether the plaintiff suffered a serious injury. The parties dispute whether Q.W. experienced any physical injuries, as well as the extent of his psychological injuries.  What is more, the Sixth Circuit has suggested that, where a teacher uses force without a pedagogical purpose and "in anger or from malice" only, a plaintiff need not present proof of physical injury to survive summary judgment.  *See Domingo*, 810 F.3d at 416 (discussing *Webb*, 828 F.2d at 1154); *see also Saylor v. Bd. of Educ. of Harlan Cnty., Ky.*, 118 F.3d 507, 514 (6th Cir. 1997).  So Defendant's reason for choking Q.W. is important to this factor too.

In the end, there is a genuine dispute of material fact about whether Defendant violated Q.W.'s constitutional rights.  This is because the parties dispute what happened between Q.W. and Defendant and the video does not reveal whether Defendant choked Q.W.  The evidence thus "presents a sufficient disagreement to require submission to a jury."  *Liberty Lobby*, 477 U.S. at 251–52.  What is more, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" *Martinez*, 703 F.3d at 914 (alteration in original) (quoting *Liberty Lobby*, 477 U.S. at 255).  And here, the jury must weigh the evidence and make credibility determinations to decide whether Defendant violated Q.W.'s constitutional rights.  The Court therefore **DENIES** Defendant's motion for summary judgment on qualified immunity.

III.     **Plaintiff's State Law Claims**

Defendant argues that, because this Court should grant his motion for summary judgment on Plaintiff's § 1983 claims, it should not exercise supplemental jurisdiction over her state law claims.  (ECF No. 44-2 at PageID 194.)  "Supplemental jurisdiction is a doctrine of discretion, not of plaintiff's right."  *Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003) (internal quotations omitted).  But if the federal and state claims "derive from a common nucleus of operative fact," a federal court can exercise supplemental jurisdiction over the state law claims. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

Here Plaintiff's federal and state law claims arise from the same set of facts.  This Court therefore has supplemental jurisdiction over Plaintiff's battery and outrageous conduct claims. Because Plaintiff's § 1983 claims survive summary judgment, the Court continues to exercise supplemental jurisdiction over her state law claims.

## CONCLUSION

In the end, Plaintiff served Defendant under Rule 4 before the statute of limitations ended.  And her failure to comply with Rule 3 does not require dismissal of her claims.  What is more, there is an issue of material fact about Defendant's qualified immunity.  For these reasons, the Court **DENIES** Defendant's motion for summary judgment.

**SO ORDERED**, this 26th day of August, 2021.

   s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE